COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Beales and Powell


ANGELA MARIE KNIGHT
                                                    MEMORANDUM OPINION*
v.      Record Nos. 1467-08-1 and 1468-08-1                PER CURIAM
                                                        JANUARY 13, 2009
CITY OF SUFFOLK DEPARTMENT
   OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                         Rodham T. Delk, Jr., Judge

              (Gregory K. Matthews, on brief), for appellant.

              (Karla Carter Haynes, Assistant City Attorney; Robert W. Jones, Jr.,
              Guardian *ad litem* for minor child J.K.; Jones & Jones, P.C., on
              brief), for appellee.

              (Nathan A. Chapman; Chapman Law Firm, P.C., on brief),
              Guardian *ad litem* for minor child Y.S.


        By orders entered on May 22 and May 27, 2008, the trial court terminated the residual

parental rights of Angela Knight to her daughters, Y.S. and J.K., pursuant to Code § 16.1-283(B).

On appeal of that decision, Knight challenges the sufficiency of the evidence to support the

terminations.  Upon reviewing the record and briefs of the parties, we conclude this appeal is

without merit.  Accordingly, we summarily affirm the decision of the trial court.  See Rule

5A:27.

        Under Code § 16.1-283(B), the parental rights of a parent of a neglected or abused child

may be terminated if the court finds by clear and convincing evidence that termination is in the best

interests of the child and that:

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). When reviewing a decision to terminate parental rights, we presume the circuit court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

Y.S. was born on September 3, 1995, and J.K. was born on June 18, 2000. In June 2001, Y.S., who was then five years old, contracted gonorrhea. After employees of the City of Suffolk Department of Social Services (DSS) became aware of a subsequent allegation of sexual abuse of Y.S. in the home where she lived with Knight, the juvenile and domestic relations district

court (juvenile court) entered a protective order requiring Knight to participate in counseling and to exclude from the home individuals not previously approved by DSS.

In November of 2002, Knight's eight-month-old infant daughter, L.R., was murdered. DSS removed Y.S. and J.K. from Knight's custody and placed them in foster care on November 12, 2002. Knight was later cleared of responsibility for the killing, and the children were returned to her. Nonetheless, the juvenile court entered a second protective order on December 9, 2002 requiring Knight and the children to participate in individual and family counseling.

Dr. Ellen Kveton, a licensed clinical psychologist, began counseling Y.S., as well as Knight, in 2001 following the allegation of sexual abuse of Y.S. During counseling, Y.S. said she did not report the sexual abuse she had experienced to Knight because Y.S. feared her mother would beat her. At the time, Knight was experiencing frustration in parenting Y.S., had difficulty handling conflict with the child, maintained expectations for Y.S. that were higher than developmentally appropriate for the child, and imposed excessive physical punishment upon her. Against Dr. Kveton's advice, Knight stopped bringing Y.S. for therapy sessions after L.R. was born.

After the infant's death, DSS again referred Y.S. to Dr. Kveton for therapy. Y.S. was undergoing emotional trauma at the time, including blaming herself for L.R.'s death. Y.S. was having difficulties in school and had been retained in both kindergarten and the first grade. Y.S. reported to Dr. Kveton that there was domestic violence in the home between Knight and Knight's boyfriend. Y.S. also described an incident where an intoxicated male friend of Knight got into Y.S.'s bed and attempted to molest her sexually. When Dr. Kveton discussed the situation with Knight, Knight blamed Y.S. for contributing to the domestic violence because the child interfered in the fighting and Y.S. "didn't know her place." Moreover, Knight indicated she did not believe the incident involving Y.S. and the intoxicated male had actually happened.

On August 18, 2003, the juvenile court found Knight in violation of the protective order by exposing the children to domestic violence. The court ordered Knight to serve a three-day sentence in jail, and the children were removed from her care.

Initially, the goal of the foster care service plans was to return the children to Knight. The plans required Knight to participate in individual counseling to address the domestic violence in the home, as well as other issues. DSS offered Knight transportation and other services to help her achieve the goals. Knight made progress toward reunification with her children, and custody of J.K. was returned to Knight on January 3, 2005.

DSS scheduled a trial placement of Y.S. with Knight, to begin on March 1, 2005. Prior to the placement, however, DSS received telephone calls indicating the police had visited Knight's home and found her harboring a fugitive. Further investigation revealed that a registered sex offender had frequent access to the home. Knight and her boyfriend, Travis Mizelle, had been involved in physical altercations exposing J.K. to domestic violence. Moreover, Knight was not sending J.K. to school consistently. As a result of these circumstances, the trial placement of Y.S. was cancelled, and J.K. was removed from Knight's custody.

J.K. was referred to Dr. Alan Roundtree, a licensed clinical psychologist, for treatment in May 2005. During the course of treatment, J.K. consistently maintained that before her removal from the home she had been exposed to numerous incidents of domestic violence between Knight and J.K.'s father, as well as between Knight and her boyfriend at the time of the removal. Some of the incidents had resulted in contacts with the police. J.K. stated she was fearful during the incidents. J.K. had come to express anxiety and fear about being returned to her mother's care, saying there was too much "fussing there."

DSS explored placement of the children with Knight's sister, J.K.'s godmother, Knight's own foster parents, and Y.S.'s paternal grandparents, but none was found suitable or completed the custody petition process. Eventually, the children were placed together with a foster family that desired to adopt them. In July and October of 2005, DSS changed its goals for Y.S. and J.K. to adoption.

During Dr. Roundtree's evaluation of Knight in November 2005, she admitted having a history of domestic violence with Y.S.'s father, but not with the man who was her boyfriend at the time the children were removed. Knight expressed her belief that the most recent removal of the children was unjustified, and stemmed from the DSS social workers' poor opinion of her.

At the termination hearing in November 2007, Dr. Kveton testified Y.S. had made significant progress since her 2005 removal from Knight's care and placement with the foster family. Dr. Kveton stated that Y.S. no longer required therapy on a regular basis. Dr. Kveton opined that, considering Y.S.'s exposure to multiple traumas and losses in her life, providing a secure and stable environment for her, such as in her foster care placement, was critical to her future.

Knight testified at the termination hearing that she was then living with Mizelle and their five-month-old baby. Both Knight and Mizelle claimed Mizelle's mother, who did not like Knight, was responsible for the reports to DSS of domestic violence in the home and that the reports were untrue. Knight admitted there had been prior incidents of domestic violence in her home involving a former boyfriend.

The evidence supported the trial court's finding that the children had suffered serious and substantial neglect while under Knight's care. In several instances, Knight had failed to protect Y.S. from sexual abuse, and the child had contracted a sexually transmitted disease at age five. Both Y.S. and J.K. were exposed to repeated domestic violence in the home.

Through years of contact with DSS, Knight's progress toward the goals precedent to reunification with her children was sporadic at best. At times she failed to comply with the protective orders issued by the juvenile court. Against Dr. Kveton's advice, Knight refused to permit Y.S. to attend the counseling sessions she needed. Moreover, rather than maintaining her home free of undesirable influences, Knight harbored a fugitive and permitted a registered sex offender to have access to the residence.

At the time of the termination hearing, nearly two and one-half years since they were finally removed from Knight's care, the children had been placed together with a foster family that wanted to adopt them. Both children had made significant progress since they were removed from Knight's home. Y.S. no longer required regular psychological counseling, but Dr. Kveton opined that it was critical for her development that she remain in a safe and stable home environment.

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986). The trial court did not err in concluding that clear and convincing evidence proved that termination of Knight's parental rights was in the best interests of the children.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-28 (1991) (quoting Lowe v. Dep't of Public Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). However, "[i]t is clearly not in the best interests of a child

to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Because sufficient evidence supports the trial court's decisions, we summarily affirm the termination of Knight's parental rights pursuant to Code § 16.1-283(B).

Affirmed.